UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORDAN HUDIS and THOMAS RITCHIE,<br><br>                                Plaintiffs,<br><br>      -against-<br><br>SITU GROUP, INC. and KIEFER LE MOIGNE,<br><br>                                Defendants. | Case No. 21 Civ. 7960<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jordan Hudis ("Hudis") and Thomas Ritchie ("Ritchie," and collectively "Plaintiffs"), by and through their undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiffs accepted full time positions as the Vice President, Capital Markets and Chief Financial Officer of Defendant Situ Group, Inc. ("Situ Group").

2. Situ Group is a financial services company in its start-up stage that provides personal banking, credit cards and loans throughout the United States.

3. Situ Group executed contracts with both Plaintiffs calling for substantial salaries and bonuses. Jordan Hudis worked for Situ Group from January to April 2021 and Thomas Ritchie worked for Situ Group from January to March 2021 but Situ Group failed to pay either Plaintiff any compensation at all.

4. Defendant Le Moigne made numerous false statements to Plaintiffs to keep them employed even though Situ Group was not living up to the contracts.

5. Le Moigne signed the Plaintiffs up for a payroll and benefits platform called Zenefits. The Zenefits platform purported to show Plaintiffs' compensation and their health

coverage. In fact, Zenefits was never funded – either for payroll or the health coverage that Defendants claimed was in place.

6. Plaintiff Ritchie attempted to use the health coverage for medical care only to be told that no such policy existed.

7. Le Moigne consistently made false claims to Plaintiffs of errors in processing their compensation and then made repeated false claims that the errors had been corrected. According to Le Moigne, Plaintiffs were going to be paid any day. Le Moigne's statements in this regard were all lies and there were no payments.

8. Defendants owe Plaintiffs the promised compensation for their work pursuant to the contracts, plus liquidated damages, interest, costs, and attorneys' fees pursuant to the Fair Labor Standards Act, New York Labor Law, and Connecticut Wage Statutes, as well as damages for Defendants' fraud.

## PARTIES

9. Plaintiff Jordan Hudis is an individual residing in New York County, New York. He principally performed his work for Situ Group from New York, New York because of the pandemic.

10. Plaintiff Thomas Ritchie is an individual residing in Fairfield County, Connecticut. He principally performed his work from his home in Darien, Connecticut because of the pandemic.

11. Defendant Situ Group, Inc. is a Delaware corporation with its purported headquarters in New York, New York. It is a bank engaged in interstate commerce.

12. Defendant Keifer Le Moigne is an individual who splits his time between Houston, Texas and Los Angeles, California. Le Moigne is the founder of Situ Group.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 201 *et seq.* In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## JOINDER OF PARTIES

14. As Plaintiffs' claims arise out of the same series of occurrences and share common questions of law and fact, they may be joined pursuant to Fed. R. Civ. P. 20 and N.Y. C.P.L.R. § 1002(a).

15. Defendants are jointly and severally liable and, as Plaintiffs' claims arise from the same series of transactions or occurrence and share common questions of law and fact, Defendants may be joined pursuant to Fed. R. Civ. P. 20 and N.Y. C.P.L.R. § 1002(a).

## FACTS

16. Situ Group is a financial services company in its start-up stage. It provides personal banking, credit cards and loans throughout the United States.

17. On December 28, 2020, Situ Group hired Ritchie as its Chief Financial Officer.

18. Ritchie and Situ Group executed a contract providing for a January 1, 2021 start date. The contract provided for a salary of $350,000 and an additional quarterly payment of 10% of Ritchie's compensation – here an additional $35,000.

19. The contract also set forth certain benefits and other compensation. The contract had a term of 36 months. The contract is attached hereto as Exhibit A.

20. Ritchie worked for Situ Group from January 1, 2021 to March 26, 2021.

21. Ritchie performed substantial work on various documents for the purported potential investors and funding sources of Situ Group. Ritchie performed this work at the request of Le Moigne and completed all of the tasks assigned to him.

22. Ritchie performed this work from home in Connecticut.

23. Ritchie stopped working on March 26, 2021 because Situ Group had failed to pay any of the promised compensation to him.

24. Ritchie never received any compensation from Situ Group at all.

25. On approximately January 8, 2021, Situ Group hired Hudis as its Vice President of Capital Markets.

26. Hudis and Situ Group executed a contract providing for a January 13, 2021 start date.

27. The contract provided for a salary of $250,000 and additional quarterly payments of 10% of Hudis' compensation – here an additional $25,000.

28. The contract also set forth certain benefits and other compensation. The contract had a term of 36 months. The contract is attached hereto as Exhibit B.

29. Hudis worked for Situ Group from January 13, 2021 to April 25, 2021.

30. Hudis performed substantial work on various documents for the purported potential investors and funding sources of Situ Group. Hudis performed this work at the request of Le Moigne and completed all of the tasks assigned to him.

31. Hudis performed this work from home in New York.

32. Hudis stopped working on April 25, 2021 because Situ Group had failed to pay any of the promised compensation to him.

33. Hudis never received any compensation from Situ Group at all.

34. Le Moigne made constant promises and false statements about Plaintiffs' missing compensation to continue to induce Plaintiffs to perform work.

35. For example, on January 29, 2021, Le Moigne sent Hudis a message stating: "Hey Jordan, Now we're fully set up with Zenefits insurance will be coming through today (its backdated to beginning of Jan for any claims - so look out for it today and sign up) Payroll dates have been set to 5th and 16th for this month, 5th will cover everything in January and first week of feb and then 16th 2 weeks from then etc."

36. Also on January 29, 2021, Le Moigne sent Ritchie a message stating: "Hey Tom. Finally got CT permission for withholding tax this morning system is automatically setting pay run dates of 5th and 19th of Feb . . . Forwarding through the new health plan to you as well, that will go live over the weekend (backdated from beginning of month for any claims)."

37. Le Moigne's statements were false. No payments were ever made.

38. Also, Ritchie went to a doctor's appointment and was told that the insurance did not exist.

39. On February 5, 2021, in response to an inquiry from Ritchie regarding payroll, Le Moigne falsely stated "on call with them [payroll processing] in 1 hour – said it will happen today already chased this AM . . ." Le Moigne's statements were false.

40. On February 18, 2021, having failed to receive any compensation, Hudis asked Le Moigne "is payroll going to run tomorrow?" Le Moigne responded, "yes it is, was delayed with sign off from Monday but they've assured will still go through. I'm on call with them at 10am tomorrow just to make sure but they've assured they will still be able to process it and it will be for entirety of outstanding to catch up!" Le Moigne's statements were false.

41. The next day, Le Moigne sent Hudis a pdf of a purported payroll summary stating: "Looks like it worked without a hitch - individual payroll summary attached. If anything looks off let me know and can query but seems to have worked! Paystubs etc. will all be logged in Zenefits."

42. Also on February 19, 2021, Le Moigne sent Ritchie purported payroll summaries stating "Payroll seems to have been submitted correctly and payments on way (they've said they think they'll go through today even after filing delay from this week)." Ritchie questioned whether the summaries were coming from Zenefits and Le Moigne responded "Yes exactly, onboarding going forward should be seamless! and yes its a separate system within Zenefits (that seems to actually work) zenpayroll."

43. Again, the claims that payroll was being made were entirely fictitious.

44. When Hudis followed up about the lack of payroll later in February 2021, Le Moigne claimed "You were right! checked in over the weekend they said 48 hours from process time so the delay will be to either EOD today or tomorrow. It needs earlier I can send today same day!" No such payment was made."

45. On February 28, 2021 Le Moigne falsely claimed "Payment sent direct to you from my acc, should clear same day!" It did not.

46. On March 5, 2021, Le Moigne falsely claimed:

> Okay think I got better information this time apparently it will show pending up until 7pm ET in the system, checked there was no permissions pending etc and they said the transaction has been approved locally so it gets put in a queue and is then assigned a wire # prior to completion.
>
> This guy said it was still looking fine for payment today but gave me after hours clearing, said that because it's run out of west coast there's still time for it to process and he can't see anything more then it's on an approved ledger.

6

47. There was no "guy" and no "payment." Le Moigne was lying to keep Plaintiffs working.

48. Le Moigne attempted to continue the ruse through March by providing Hudis with purported screen shots of bank account transactions and payroll reports.

49. No payments were ever made to either Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – BREACHES OF CONTRACT
### (Both Plaintiffs Against Situ Group)

50. Plaintiffs incorporate and reallege each and every paragraph above as if fully set forth herein.

51. As reflected in Exhibit A, Situ Group and Ritchie entered into a contract.

52. Situ Group offered the terms set forth in Exhibit A and Ritchie accepted them both by signature and by starting to work for Situ Group on January 1, 2021. Situ Group accepted and directed Ritchie's work.

53. As reflected in Exhibit B, Situ Group and Hudis entered into a contract.

54. Situ Group offered the terms set forth in Exhibit B and Hudis accepted them both by signature and by starting to work for Situ Group on January 13, 2021. Situ Group countersigned Exhibit B and accepted and directed Hudis' work.

55. Plaintiffs performed their obligations pursuant to the contract by completing all work requested of them. Plaintiffs' work for Defendants was substantial.

56. Situ Group breached the contracts by failing to make any of the required payments to Plaintiffs.

57. Pursuant to the contract (Exhibit A), Situ Group owes Ritchie $81,506.85 in salary plus $35,000 in quarterly compensation plus interest through the date of judgment at 10%

simple interest pursuant to Connecticut General Statutes § 37-3a(a). Ritchie is also entitled to post-judgment interest and costs.

58. Pursuant to the contract (Exhibit B), Situ Group owes Hudis $70,547.95 in salary plus $25,000 in quarterly compensation plus interest through the date of judgment at 9% simple interest pursuant to N.Y. C.P.L.R. § 5004. Hudis is also entitled to post-judgment interest and costs.

**SECOND CAUSE OF ACTION – FEDERAL MINIMUM WAGE VIOLATION**
**(Both Plaintiffs Against Both Defendants)**

59. Plaintiffs incorporate and reallege each and every paragraph above as if fully set forth herein.

60. Situ Group repeatedly and willfully failed to pay Plaintiffs any wages at all for their work. Thus, Situ Group failed to pay Plaintiffs the required minimum wage.

61. Le Moigne is also personally liable as he possesses significant ownership interests in Situ Group, he exercised day-to-day control of operations, and he was involved in the supervision and payment of employees. Le Moigne willfully failed to make any payments to Plaintiffs at all and repeatedly lied to them about the status of such payments.

62. By failing to pay minimum wages to Plaintiffs, Defendants violated 29 U.S.C. § 201 *et seq.*

63. Defendants were engaged in interstate commerce. Hudis and Ritchie conducted their work from New York and Connecticut respectively and communicated with Le Moigne by telephone and electronic messaging in Texas and California. Also, the business of Situ Group is financial services, including banking and providing credit card services, throughout the United States.

64. Defendants are liable to Plaintiffs for unpaid wages, liquidated damages of 100% of the unpaid wages, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION – VIOLATION OF NEW YORK LABOR LAW
### (Hudis Against Both Defendants)

65. Plaintiffs incorporate and reallege each and every paragraph above as if fully set forth herein.

66. At all times relevant, Hudis was an "employee" within the meaning of the New York Labor Law.

67. At all times relevant, Situ Group and Le Moigne were each employers, as well as joint employers, of Hudis within the meaning of the New York Labor Law.

68. Defendants violated the New York Labor Law by failing to pay Hudis any compensation at all.

69. Doing so violated § 191(1) regarding frequency of payments, § 191(3) regarding payments due at the end of the employment relationship, § 193 regarding unauthorized deductions from wages, and § 650 *et seq.* regarding minimum wages.

70. As such, Hudis is entitled to the unpaid wages plus interest, liquidated damages of 100% of the unpaid wages, and attorneys' fees pursuant to New York Labor Law §§ 198 and 663.

### FOURTH CAUSE OF ACTION – VIOLATION OF CONNECTICUT WAGE STATUTES
### (Ritchie Against Both Defendants)

71. Plaintiffs incorporate and reallege each and every paragraph above as if fully set forth herein.

72. At all times relevant, Ritchie was an "employee" within the meaning of the Connecticut General Statutes, §§ 31-58 and 31-71(a)(2).

73. At all times relevant, Situ Group and Le Moigne were each employers, as well as joint employers, of Ritchie within the meaning of the Connecticut General Statutes, §§ 31-58 and 31-71(a)(1).

74. Defendants violated the Connecticut Wage Statutes by failing to pay Ritchie any compensation at all.

75. Doing so violated Conn. Gen. Stat. § 31-71b regarding frequency of payments, Conn. Gen. Stat. § 31-71c regarding payments due at the end of the employment relationship, Conn. Gen. Stat. § 31-71e regarding unauthorized deductions from wages, and Conn. Gen. Stat. §§ 31-58 and 31-60 regarding minimum wages.

76. Defendants violations were willful in that they knew they were required to make the payments and intentionally lied to Ritchie regarding the payments.

77. As such, Ritchie is entitled to the unpaid wages plus interest, liquidated damages of 100% of the unpaid wages, costs, and attorneys' fees pursuant to Conn. Gen. Stat. § 31-72.

**FIFTH CAUSE OF ACTION – FRAUD**
**(Both Plaintiffs Against Both Defendants)**

78. Plaintiffs incorporate and reallege each and every paragraph above as if fully set forth herein.

79. Le Moigne, personally and on behalf of Situ Group, made numerous misrepresentations to Plaintiffs regarding the status of their wage payments and of their health insurance.

80. Defendants knew that they had not funded the payroll payments or the health insurance.

81. Defendants knew that Plaintiffs were relying on Defendants' statements regarding their wages and that Plaintiffs were working for the agreed-upon and promised wages.

10

82. Plaintiffs relied on Defendants' misrepresentations to continue to work for Defendants.

83. As a result, Plaintiffs passed up other business opportunities and continued to work for Defendants without compensation.

84. As such, Defendants are liable to Plaintiffs for the actual, compensatory, and general damages to Plaintiffs in an amount to be proven at trial.

85. In addition, as Defendants' conduct was willful and without justification, Defendants are liable for punitive damages.

### SIXTH CAUSE OF ACTION – QUANTUM MERUIT AND UNJUST ENRICHMENT
### (Both Plaintiffs Against Both Defendants)

86. Plaintiffs incorporate and reallege each and every paragraph above as if fully set forth herein.

87. Should any portion of the agreements found at Exhibits A or B, or the ratifications thereof, be found not to constitute enforceable contracts, in the alternative, Plaintiffs are entitled to recover under *quantum meruit* and unjust enrichment.

88. Plaintiffs performed their services for Defendants exceptionally well and in good faith. They reasonably expected to be compensated at the market rate for their services.

89. Defendants accepted Plaintiffs' services knowing of Plaintiffs expected compensation at the agreed-upon rate.

90. Defendants also made numerous representations to Plaintiffs regarding the compensation they would receive.

91. Defendants have been unjustly enriched by Plaintiffs' services.

92. Plaintiffs conferred several benefits upon Defendants.

93. Defendants have unjustly retained and accepted those benefits without adequately or appropriately compensating Plaintiffs.

94. Plaintiffs are entitled to just compensation for the benefits their services conferred upon Defendants and for the reasonable value of their services in an amount to be determined at trial.

## JURY DEMAND

95. Plaintiff requests a jury trial with respect to all claims so triable.

**WHEREFORE**, Plaintiff requests the following relief:

A) Compensatory damages in an amount to be determined at trial, including but not limited to unpaid compensation to Ritchie of $81,506.85 in salary plus $35,000 in quarterly compensation and unpaid compensation to Hudis of $70,547.95 in salary plus $25,000 in quarterly compensation;

B) Consequential damages in an amount to be determined at trial, including but not limited to lost compensation and lost business opportunities;

C) General damages, including but not limited to compensation for the damage to Plaintiffs' reputation, career, and emotional distress;

D) Attorneys' fee and costs;

E) Liquidated damages;

F) Punitive damages;

G) Pre- and post-judgment interest; and

H) All other relief that this Court deems just and proper.

Dated: September 24, 2021    RASCO KLOCK PEREZ & NIETO, LLC

_____
James Halter
555 Fifth Avenue, 17th Floor
New York, New York 10017
Phone: (646) 970-4770
jhalter@rascoklock.com
*Attorneys for Plaintiffs*